```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW HAMPSHIRE
```

Douglas Warford, Isabelle
Taylor, LLC, and CNA
Insurance Company

    v.                                  Civil No. 06-cv-463-JL
                                         Opinion No. 2008 DNH 105

Industrial Power Systems,
Inc. and A.F. Theriault
& Son Ltd.


**O R D E R**

The plaintiffs, Douglas Warford, Isabelle Taylor, LLC ("the shipowner"), and CNA Insurance Company, proceeding as Warford's assignee and the shipowner's subrogee, are suing to recover for personal injury and property damage arising out of an explosion and fire on the shipowner's fishing vessel, the F/V Isabelle Taylor, insured by CNA. The defendants, Industrial Power Systems ("IPS") and A.F. Theriault & Son Ltd. ("Theriault"), move in limine to preclude certain of the plaintiffs' witnesses from offering expert testimony at the upcoming bench trial. The court heard oral argument on the motion at the final pre-trial conference on May 15, 2008.

The court has jurisdiction over this matter under 28 U.S.C. § 1333(1) (maritime). For the following reasons, the defendants' motions are denied without prejudice to renewal of their objections to the anticipated testimony at trial.

## I.     BACKGROUND

A flash fire aboard the Isabelle Taylor caused severe burns to the ship's engineer, Warford, while he was working in the vessel's switchboard, an electrical control designed and built by IPS as part of an overhaul of the vessel's electrical system intended to allow the Isabelle Taylor to refrigerate its catch at sea.  The work on the overhaul took place at Theriault's shipyard in Nova Scotia, and included the installation of three new generators manufactured by third parties.  While Theriault performed certain aspects of the work, including the installation of the generators, under a written contract with the shipowner, the actual labor involved in installing the switchboard was performed on-site by an IPS technician, working in conjunction with Warford himself.

Eventually, the Isabelle Taylor left the shipyard to return to its home port in Portsmouth, New Hampshire, but the parties dispute whether they understood that the work had been completed at that point.  The plaintiffs allege that neither Warford nor the shipowner "was ever told that there was necessary work not done or that the vessel was not ready to fish."  But the defendants claim that the plaintiffs knew that, because the generators had not yet been synchronized, the vessel could not be operated without a crew member's continually making manual

adjustments to the voltage and frequency of the generators by using of a voltage meter.  The defendants say, in fact, that IPS's technician reviewed that procedure with Edwards before the Isabelle Taylor had set out for Portsmouth, and that Warford was attempting to execute that procedure at the time of the fire.  He started the blaze by placing an alligator clip from his meter across the terminals of two different fuse blocks, and on the "high side" of the fuse, i.e., on the side closer to the source of the current, causing a short circuit.

The plaintiffs, however, maintain that Warford attempted the procedure only when he "discovered that the generators were not load sharing properly as they should have been" and maintain that the fire resulted from the defendants' faulty installation of one of the generators and defective design of the switchboard. First, the plaintiffs say, a loose bolt in the generator's splice block caused an erratic connection, manifesting itself in the problems that required Warford to open the panel to test the voltages.  The plaintiffs fault the defendants for failing to inspect the generators before the Isabelle Taylor left the shipyard, and allowing it to leave without the electrical system functioning properly.

Second, the plaintiffs say, the panel was defectively designed because (1) the terminals on the fuse blocks were placed

too close together, allowing Warford to place the alligator clip across two of them at once, (2) the overload protection system should have consisted of circuit breakers rather than fuses, or at least a safer type of fuse holder, (3) this system should have been placed at the shortest possible distance from the power source, (4) the fuse holders should have been protected by a shield, (5) the high-voltage zone of the fuse holders should not have been included in the otherwise low-voltage panel, and (6) the panel lacked the necessary warnings.  The plaintiffs also assert that IPS should have warned Warford not to try to manipulate the generators as he did.

In the fire, Warford suffered second-degree burns to his face and left hand, necessitating hospitalization, and the Isabelle Taylor suffered damage, necessitating repairs.  The shipowner seeks more than $202,000 in profits it allegedly lost as the result of missing three fishing trips while the repairs were completed.  The Isabelle Taylor had been scheduled to embark on a "pair trawling" venture with another similar boat, the F/V Jean McCausland, just two days after the fire struck.  So the Jean McCausland ended up fishing with another trawler, which, unlike the overhauled Isabelle Taylor, lacked the capacity to carry fish, cutting the profitability of the venture in half, according to the plaintiffs' calculations.

## II. APPLICABLE LEGAL STANDARD

The plaintiffs have identified three expert witnesses to testify on their behalf: Frederick Osborne, David DuBois, and David "Nick" Jenkins. Under the Federal Rules of Evidence,

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. As the structure of this rule suggests, before the factfinder in a case can consider expert testimony over the adverse party's objection, the trial judge, serving as "gatekeeper," must determine whether the testimony satisfies the relevant foundational requirements. See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993). In a bench trial, however, "where the factfinder and the gatekeeper are the same, the court does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702." In re Salem, 465 F.3d 767, 777 (7th Cir. 2006); see also United States v. Brown, 415 F.3d 1257, 1269 (11th Cir. 2005) ("There is

5

less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself.").

The defendants argue in tandem that each of the plaintiffs' proffered expert witnesses lacks the requisite qualifications to give some or all of his proffered opinion testimony, while defendant Theriault challenges a number of the opinions on additional grounds.[1]  The court will consider the defendants' objections to each of the plaintiffs' designated experts in turn.

## III. ANALYSIS

### A. Frederick Osborne

The plaintiffs have designated Osborne to testify in support of their theories of causation and liability against both defendants.  Specifically, Osborne believes that Theriault deviated from accepted industry practice by failing to inspect the generators before installing them, that one of the generators had a loose bolt in its splice block that caused the electrical system to malfunction, that the defendants should not have allowed the Isabelle Taylor to leave Nova Scotia with its

---

[1] One of these grounds is that the materials on Osborne's anticipated testimony provided to the defendants in discovery did not contain "a complete statement of all opinions [he] will express and the basis for them" as required by Fed. R. Civ. P. 26(a)(2)(B)(i).  Because Theriault has previously waived this argument, however, it is rejected without further discussion.

electrical system in that condition, and that these missteps precipitated the fire by requiring Warford to open the control panel in the first place.  Osborne also believes that IPS designed the control panel with a number of defects, listed in Part I, supra, that allowed Warford to touch his meter clip to the terminals of two separate fuse holders, sparking the fire.

    Osborne runs a marine electrical service company in New Bedford, Massachusetts, where he has spent almost twenty years doing strictly electrical work on boats.  Prior to that, he spent more than a decade as a marine engineer; the vast majority of that work was electrical as well.  He holds no degree in electrical engineering or any related field, however.  While Osborne's company rarely installs marine generators, it regularly does the work of connecting those generators to other components of the boat's electrical system.  The company also performs troubleshooting work on marine generators, including ones from the same manufacturer as two of the Isabelle Taylor's.  Osborne's company also installs control panels designed and built by either the company itself or by a third party.  But the panels the company designs are, by Osborne's own admission, "much less complicated" than the one IPS designed for the Isabelle Taylor.  The company also has little experience synchronizing multiple

generators, because, according to Osborne, that arrangement is uncommon on boats in the area.[2]

Because Osborne has never designed a control panel for a system with synchronized generators, IPS argues that he is unqualified to render opinions on its design of its panel, likening them to "the pilot of a Piper Cub commenting on the technique of the pilot of a Boeing 747 jetliner." Similarly, Theriault argues that Osborne cannot opine on the source of the malfunction in the generator because he "is not a licensed electrician [or] an engineer." These arguments are misplaced.

"Rule 702 does not require specific educational training in the area of expertise and . . . an expert need not have design experience with the particular product in order to render expert opinion about the unreasonableness of its design." Tokio Marine & Fire Ins. Co. v. Grove Mfg. Co., 958 F.2d 1169, 1175 (1st Cir. 1992); see also Stagl v. Delta Air Lines, Inc., 117 F.3d 76, 81-82 (2d Cir. 1997); DaSilva v. Am. Brands, Inc., 845 F.2d 356, 361 (1st Cir. 1988). IPS has not identified any specific differences between the electrical panel it built for the Isabelle Taylor and

---

[2]Osborne explained at his deposition that, while boats with two generators are common, in that arrangement one generator usually serves as a backup power source, so that the generators need not be synchronized like the three generators installed aboard the Isabelle Taylor.

8

the many electrical panels built by Osborne that would make him incapable of providing the court with "technical[] or other specialized knowledge" about the design of marine electrical panels.[3]  Nor has Theriault identified any specific differences between the wiring work it did on the Isabelle Taylor's three-generator system and the wiring and troubleshooting work Osborne regularly does on other boats' one- or two-generator sets.  In any event, "Rule 702 is not so wooden as to demand an intimate level of familiarity with every component of a . . . device as a prerequisite to offering expert testimony." Microfinancial, Inc. v. Premier Holidays Int'l, Inc., 385 F.3d 72, 80 (1st Cir. 2004).

The First Circuit has upheld the admission of expert testimony in maritime cases over objections similar to the ones the defendants have raised here. See, e.g., Correa v. Cruisers, A Div. of KCS Int'l, Inc., 298 F.3d 13, 25-26 (1st Cir. 2002) (ruling that engineer experienced in repairing engines could opine to defectiveness of fuel management system, despite lack of experience with that particular engine component); Diefenbach v. Sheridan Transp., 229 F.3d 27, 31 (1st Cir. 2000) (ruling that

---

[3]Indeed, insofar as the court can understand from the materials presently before it, the alleged defects Osborne has identified in the IPS panel--e.g., the placement of the fuse holders, the type of overload protection used, the lack of warnings--do not implicate features unique to a panel that connects three generators, as opposed to only one or two.

sea captain properly gave expert testimony on docking and undocking equipment and procedures on integrated tug and barge, despite his lack of experience with that kind of vessel).  In short, "expert witnesses need not have overly specialized knowledge to offer opinions."  Levin v. Dalva Bros., 459 F.3d 68, 78 (1st Cir. 2006).  This court will allow Osborne to testify over the defendants' objections as to his lack of qualifications.

IPS also argues that Osborne cannot testify because, in developing his opinions about the design of the switchboard, he did not employ a "'theory or technique [that] . . . can be (and has been) tested,'" that "'has been subjected to peer review and publication,'" and that "enjoys 'general acceptance' within 'a relevant scientific community.'"  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 149-50 (quoting Daubert, 509 U.S. at 592-94) (further internal quotation marks omitted).  As the Court made clear in Kumho Tire, however, these "factors identified in Daubert may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."  Id. at 150 (internal quotation marks omitted).

Thus, while the Court observed that "[e]ngineering testimony rests upon scientific foundations, the reliability of which will be at issue in some cases," it also acknowledged that, "[i]n

other cases, the relevant reliability concerns may focus upon personal knowledge or experience" and therefore be less likely to implicate the Daubert factors. This is the latter kind of case: Osborne claims to have formed his opinions on the design of the switchboard based on his own experience in designing and installing similar components.[4] "In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony," without regard to the particular Daubert criteria. 3 Louis R. Frumer & Melvin I. Friedman, Products Liability § 18A.04[6][f], at 18A-80.11 (1960 & 2008 supp.). So it is immaterial--and unsurprising--that an experienced designer of marine electrical switchboards would draw upon that experience, rather than peer-reviewed studies or other published literature, in identifying the alleged defects in a particular switchboard designed by somebody else.[5]

Theriault further argues that Osborne cannot opine as to its alleged failure to inspect the generator before installation because, at his deposition, he testified that he probably would not have removed tape from the leads on the generator to check

---

[4]Osborne testified, in fact, to the absence of published standards governing most marine electrical work, as opposed to its shore-based counterpart.

[5]IPS makes similar challenges to the testimony of Dubois and Jenkins, which are rejected for essentially the same reasons.

11

the connection before installation if it had arrived from the manufacturer with the leads taped.  Theriault also argues that Osborne cannot opine as to its alleged failure to warn the plaintiffs that the Isabelle Taylor's electrical system was not fully operational when she left Nova Scotia or that the electrical panel contained high voltage because, Theriault asserts, the plaintiffs were fully aware of both of those hazards.  "Objections of this type, which question the factual underpinnings of an expert's investigation, often go to the weight of the proffered testimony, not to its admissibility."  Crowe v. Marchand, 506 F.3d 13, 18 (1st Cir. 2007).

Osborne's deposition testimony does not conclusively establish that the generator at issue came from its manufacturer in a taped condition, excusing Theriault from its alleged obligation to inspect it; likewise, the plaintiffs' alleged awareness of the dangers at issue is, at the moment at least, simply one inference to be drawn from the evidence likely to be offered at trial.  If the court, sitting as factfinder, ends up resolving these disputes in Theriault's favor, that will undoubtedly weaken Osborne's opinions as to its liability, but that possibility provides no basis for excluding those opinions now, when the court has yet to hear the evidence.  The defendants' motion to exclude Osborne's testimony is denied,

without prejudice to renewing it should the proof at trial leave his opinions without the necessary factual support.

## B.   David Dubois

While the plaintiffs have designated Dubois to testify on a number of subjects, the defendants seek to exclude his opinions only as they relate to liability and causation. Specifically, the defendants challenge his conclusions that (1) they failed to provide workmanlike performance in servicing the Isabelle Taylor, (2) IPS was negligent in its design and installation of the electrical panel, (3) Theriault was negligent in failing to inspect the generator "so as to discover the loose bolt . . . and in allowing the vessel to leave the yard with that condition extant or with any electrical fault existing," and (4) the defendants are therefore "responsible" for the fire.

Dubois has been investigating incidents of personal injury and property damage occurring on commercial vessels for nearly thirty years through his affiliated companies, Marine Safety Consultants and Maritime Claims. He attended the United States Coast Guard Academy, receiving a bachelor's degree in science with a concentration in marine engineering and mathematics. He then spent eight years in the Coast Guard, serving as a chief engineer officer aboard a cutter, overseeing the overhaul of

another cutter, and working as a marine inspector and investigator. He has testified as an expert in a number of reported maritime accident cases.[6]

The defendants nevertheless argue that Dubois lacks the requisite qualifications to opine on their responsibility for the fire, asserting that he has no experience or training in electrical matters. In the court's view, that cannot be fairly said of a man who has spent nearly forty years inspecting and overseeing the upgrades and repairs of commercial and Coast Guard vessels, of which electrical systems are an essential part. Cf. Hopkins, 271 F.3d at 4 (upholding admission of Dubois's testimony as to crewman's departure from standard of care over objection that Dubois was unqualified, noting that he "was a graduate of the Coast Guard Academy who had served as an inspector of ships

---

[6]See Matos v. Silva Fishing Corp., 21 Fed. Appx. 24, 26 (1st Cir. 2001) (unpublished disposition); Hopkins v. Jordan Marine, Inc., 271 F.3d 1, 4 (1st Cir. 2001); Minott ex rel. Minott v. Smith, No. 03-10, 2003 WL 22078070, at *2-*3 (D. Me. Sept. 5, 2003), rept. & rec. adopted, 2003 WL 22519653 (D. Me. Nov. 5, 2003), aff'd sub nom. Poulis-Minott v. Smith, 388 F.3d 354 (1st Cir. 2004); In re Moran Towing & Transp. Co., 1989 A.M.C. 2492 (D. Me. 1989); see also Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins. Co., 169 F.3d 43, 49 (1st Cir. 1999) (noting Dubois's investigation of a fire aboard a fishing vessel which determined it was electrical in nature); but see Lisa v. Fournier Marine Corp., 866 F.2d 530, 531 (1st Cir. 1989) (per curiam) (affirming exclusion of Dubois's testimony where proponent "neither objected at trial to exclusion . . . nor explain[ed] on appeal why it was erroneous").

for the Coast Guard followed by years of consulting work in ship inspection and investigating maritime accidents"). At his deposition, in fact, Dubois repeatedly testified that he does have a background in marine electrical work and demonstrated an understanding--which the defendants have not attempted to question--of the electrical concepts at issue.

That Dubois, in formulating his own opinions in this case, relied in part on Osborne's more specialized knowledge of that subject--or, as Theriault complains, Osborne's investigation of the scene--does not disqualify Dubois from testifying on it himself. "[W]hen an expert relies on the opinion of another, such reliance goes to the weight, not to the admissibility of the expert's opinion." Ferrara & DiMercurio, 240 F.3d at 9 (upholding admission of expert testimony on whether marine fire had electrical origin over similar objections, including that one expert had impermissibly relied on observations and report of another). Here, as in Ferrara & DiMercurio, the court will allow Dubois to give his proffered opinions, subject to cross-examination and argument by the defendants over his asserted lack of expertise in and reliance on Osborne for electrical matters.[7]

---

[7] Theriault also argues that Dubois, at his deposition, "was either unable or unwilling to offer specific opinions regarding what [it] did wrong in installing any of the systems aboard the vessel or why it was wrong." The court does not read Dubois's

The defendants' motions to exclude Dubois's opinions are denied without prejudice to renewing their objections at trial.

## C. David "Nick" Jenkins

The plaintiffs have designated Jenkins to testify to one aspect of their damages: the profits allegedly lost due to the Isabelle Taylor's inability to participate in a pair trawling venture for herring while she was undergoing repairs. The defendants do not argue that Jenkins--who has worked as a commercial fisherman for twenty years, eight of them as the manager of an entire fishing fleet--is unqualified to give this opinion. Instead, the defendants characterize his damage calculation, summarized in Part I, supra, as "entirely speculative" because the Isabelle Taylor had never fished as part of a pair trawling operation prior to the fire.

Just as in cases of land-based torts, a plaintiff in a maritime action seeking to recover lost profits--including from a lost opportunity at commercial fishing--need show them only to a

---

deposition testimony that way. While Dubois admitted that he was unaware of the exact parameters of Theirault's role in the design and installation of the panel itself, he stated that Theriault was at fault for failing to discover the loose connection in the generator, for failing to test the ship's electrical system, and for failing to warn the plaintiffs of the dangers of operating the ship with the system unfinished.

reasonable certainty.  See Yarmouth Sea Prods. Ltd. v. Scully, 131 F.3d 389, 395 (4th Cir. 1997) (citing The Conqueror, 166 U.S. 110, 125 (1897)); Miller Indus. v. Caterpillar Tractor Co., 733 F.2d 813, 822 (11th Cir. 1984); accord Trans-Asiatic Oil, Ltd. v. Apex Oil Co., 804 F.2d 773, 782 (1st Cir. 1986) (applying "reasonable certainty" test to claim for demurrage).  The defendants acknowledge not only this rule, but also that lost fishing profits may be adequately shown "by catches of similar vessels on the same fishing grounds during the period" at issue. See, e.g., Miller Indus., 733 F.3d at 822.  That is the plaintiffs' proposed method of proof: to show that the Isabelle Taylor would have caught at least as many fish as her would-be trawling partner, the Jean McCausland, was able to catch in tandem with a different boat on the same fishing grounds in the same period.  While the defendants are free to challenge the resulting estimate by way of cross-examination or argument, they have provided no basis for preventing Jenkins from testifying to the estimate altogether.  See, e.g., Guy v. Starwood Hotels & Resorts Worldwide, Inc., 2005 DNH 126, 13 (denying motion to exclude evidence of plaintiff's lost profits where "defendants' questions about the accuracy of the estimate can be addressed through cross-examination").  Their motions to exclude Jenkins's testimony on this subject are denied.

17

**IV.    CONCLUSION**

For the foregoing reasons, the defendants' motions in limine (document nos. 25 and 31) are DENIED without prejudice to renewal of the defendants' objections at trial.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  May 16, 2008

cc:  Christine Friedman, Esq.
     William H. Welte, Esq.
     Lee Stephen MacPhee, Esq.
     Peter G. Callaghan, Esq.
     Gregory P. Hansel, Esq.
     Michael Kaplan, Esq.
     Daniel P. Luker, Esq.